[No. 6010.]

PEOPLE EX REL. COLORADO BAR ASSOCIATION
v. ERBAUGH.

1. **Attorneys-at-Law — Meaning of "Attorney" — Words and Phrases.**

The word "attorney," following the name of a person, when not qualified, is ordinarily understood to mean a member of the legal profession, and one who, as an attorney-at-law, is legally authorized to appear for and represent clients who are parties to causes in courts of record.—P. 487.

2. **Attorneys-at-Law—Admission to Practice—Practitioners Not Licensed—Contempt of Court.**

Chapter 77, Sess. Laws 1905, provides that any person who shall, without having a license from the supreme court of this state so to do, advertise or hold himself out as an attorney-at-law, or who shall appear in any court of record to conduct a suit for another person, shall be deemed guilty of contempt, etc. Held, that one who, not being licensed to practice law, caused his name to be printed in the city directory, on his office signs, business cards, and letter-heads, followed by the words "Attorney, Solicitor of American and Foreign Patents," or by the words "Attorney, Patent Law and Counsel in Patent Causes," and who, in reply to a letter as to a divorce, replied on one of such letter-heads, without stating that he was not engaged in the practice of law, violated the statute, and the fact that he wrote other letters wherein he stated that he confined his practice exclusively to patents, pensions and claims against the government, was no defense, although it might be notice to those addressed that his practice was so limited.—P. 488.

3. **Constitutional Law—Subjects and Titles of Acts—Requirements.**

That which is appropriate or relevant to the subject of a bill as expressed by its title, or is a necessary incident to the object

of a bill as thus expressed, is germane, and one test in this re-
spect is whether the legislation in the body of the bill is on
matters properly connected with its subject as expressed by its
title, or proper to the more full accomplishment of the object
so indicated.—P. 490.

4.   Same.

Chapter 77, Sess. Laws 1905, entitled "An act to provide for
the punishment of one guilty of practicing law without a license,"
and providing in section 1 that any person who shall, without
having a license from the supreme court of the state so to
do, advertise, represent, or hold himself out in any manner as
an attorney, or who shall appear in any court of record in the
state to conduct a suit for another person, shall be deemed guilty
of contempt, and shall be punished, is not obnoxious to § 21, art.
5, Colo. const., providing that no bill, except general appropria-
tion bills, shall be passed containing more than one subject,
which shall be clearly expressed in its title.—P. 490.

## *Original Proceeding in Contempt.*

## *On Motion for Judgment on the Pleadings.*

Original proceeding in contempt by the people,
on the relation of the Colorado Bar Association
against Charles O. Erbaugh.   Motion by petitioner
for judgment on the pleadings.   *Motion sustained.*

Decision *en banc.*

Mr. GEO. F. DUNKLEE and Mr. W. H. DICKSON,
attorney general, for petitioner.

Messrs. MELVILLE, SACKETT & CALVERT, for re-
spondent.

By the statutes of this state (Session Laws 1905,
p. 157) it is provided by an act entitled "An act to
provide for the punishment of one guilty of practic-
ing law without a license":

"Section 1.   That any person who shall, without
having a license from the supreme court of this state
so to do, advertise, represent, or hold himself out in

31

any manner as an attorney, attorney-at-law, or counselor-at-law, or who shall appear in any court of record in this state to conduct a suit, action, proceeding, or cause for another person, shall be deemed guilty of contempt of the supreme court of this state and of the court in which said person shall so appear, and shall be punished therefor according to law. * * *''

Respondent is charged with having violated this section, in that he is not licensed by this court to practice law in this state; but, notwithstanding this fact, has been advertising and holding himself out as an attorney. By the information filed, the particulars in which he has violated the above statute is charged, in substance, as follows:

That he caused his name to be published in the city directory of the city of Denver for the year 1905 as follows:

"Erbaugh, Charles O., Attorney, Solicitor of American and Foreign Patents. * * * 419-420 Commonwealth Building"; that by reason of this publication his name appears in the above directory in the list of attorneys-at-law; that respondent has offices at the rooms above designated, and upon the door and entrance to his office he has caused his name, "Charles O. Erbaugh, Attorney," to be placed, and upon the outside window of his offices he has caused the same sign to be displayed: that respondent has caused to be printed, issued and distributed, cards bearing his name as follows:

"Charles O. Erbaugh,

Attorney,

Patent Law and Counsel in Patent Causes,

Commonwealth Building,

Denver, Colorado."

That previous to moving into the Commonwealth Building he had offices in the Equitable Building, from which he issued cards as follows:

"Chas. O. Erbaugh,

Attorney at Law,

642-3-4 Equitable Building,

Telephone 1418C.  Denver, Colorado."

That November 27, 1905, he received a letter addressed to him, which, omitting the place at which it was written and the name of the writer, is as follows:

"A friend of ours in Ohio advised me to communicate with you in regard to a matter in court. I wish to know how much it will cost to get a divorce, and how long one has to live in Colo. to procure a separation; also, if the matter can be kept from publicity. I have ample means to pay all expenses. Please let me know how much I will have to send you in advance. I expect to be able to get down to Denver in a month or so. I get mail twice a week, so let me hear from you soon."

To this he replied upon a letter-head containing the following:

"Copyrights     Cable Address, Chaso     Trade Marks
Caveats                  Denver                     Patents

Chas. O. Erbaugh

Attorney

PATENT LAW and COUNSEL in PATENT
CAUSES

Century Building

Address mail
Post Office Box 954

\* \* \* \* \* \*

"You must reside in Colorado one year before jurisdiction will be established. The cost will be about one hundred dollars, one-half down in advance. The matter can be kept suppressed.

Yours truly,

Chas. O. Erbaugh."

Upon this information being filed, a rule upon respondent to show cause why he should not be punished for contempt of this court for representing, advertising and holding himself out as an attorney was issued. In response to this rule the respondent answered, the substance of which, so far as material, is as follows:

He denies that he has ever represented, advertised, or held himself out as an attorney, or attorney-at-law, or counselor-at-law, authorized to practice in the courts of record in this state; but admits that he has used the word "attorney" in connection with his name, but only in a qualified or restricted sense by using it in connection with the word "patents," or some phrase pertaining to patents, claims, or pensions, whereby he seeks to deduce the conclusion that employing the word "attorney" in connection with the other subjects referred to clearly indicates that he was an attorney appearing exclusively in matters pertaining to patents, claims or pensions. He avers that to advise the public that his practice was so limited, he published, issued and distributed a large number of letters, a copy of which is attached to his answer, in which he expressly states that he confines himself and his practice to patents, pensions and claims against the government. He admits that he caused his name to be published in the city directory as stated in the information, but avers that he intended thereby to show that he practiced as an attor-

ney exclusively in matters pertaining to patents. He avers that he did not authorize or request his name to be inserted in the list of attorneys-at-law published in the directory above mentioned. He admits that he has offices in the Commonwealth Building, and that upon the entrance door to his office he caused his name to be placed and also a sign to be displayed upon the window of his offices, as stated in the information, but that in addition thereto, and immediately under the sign on his door, were also the words "Solicitor of American and Foreign Patents," and under the sign on his window the word "Patents." He admits having caused the cards first mentioned in the information to be printed, issued and distributed, and also admits that cards were published bearing his name as next stated therein, but denies that he ordered them, and avers that they were printed through a mistake of the printer, and that he has refrained from using or distributing them because of such mistake, and has destroyed them as far as possible.

He admits receiving the letter mentioned in the information, and writing the reply thereto, as therein stated, upon a letter-head containing the words set out in the information. He further says that "Soon after the filing of the petition herein he destroyed all stationery, cards, signs, or parts of signs, which were objectionable to, and which were complained of by, the petitioner herein, for the reason that he had no desire to do things which did not meet with the approval of the Colorado Bar Association." He further states "that whether or not this Honorable Court finds that this respondent has been guilty of contempt, respondent has, and will forever refrain from doing the acts complained of, which this court shall deem constitutes such contempt." He does not deny the charge that he is not a licensed attorney.

As a further defense, he challenges the validity of the act in question, for the reason that the title of such act pertains only to the punishment of one guilty of practicing law without a license, while the information charges him with representing, advertising, and holding himself out as an attorney, and hence the part of the act pertaining to one representing, advertising, and holding himself out as an attorney without having a license is unconstitutional, for the reason that this subject is not clearly expressed in the title, or is not germane to such title.

Upon filing this answer, petitioner filed a motion for judgment upon the pleadings based upon the ground that by his answer the respondent has admitted the acts charged in the information. This motion is resisted by respondent upon two grounds:

(1) That the acts charged which he admits by his answer do not, under the explanations offered, constitute a violation of the statute in question, for the reason that the use of the word "attorney" after his name in the city directory and upon the cards first mentioned in the information, and upon his letter-heads and signs upon the door to his offices and window thereof, in connection with the other words, clearly indicate, and only convey, the information that he is an attorney in matters pertaining to patents; and,

(2) That the act which he is charged with having violated is unconstitutional, in that it violates § 21, article 5, of the constitution of the state, which provides: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; * * *."

No other questions are raised by the respondent than those we have indicated, and we shall confine

our discussion and determination of the motion of petitioner to these questions.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Respondent, by his answer, does not claim to be a licensed attorney, and admits that he caused his name to be published in the directory of the city of Denver as follows: "Erbaugh, Charles O., Attorney, Solicitor of American and Foreign Patents."

He also admits that he caused his name to be placed upon the door of his office and upon a window of his office followed by the word "Attorney," but avers that on the door there further appears, following the word "Attorney," "Solicitor of American and Foreign Patents," and under the sign on his window the word "Patents." He further admits the issuance and distribution of the cards bearing his name, under which appears the word "Attorney," followed by "Patent Law and Counsel for Patent Causes," and the use of letter-heads containing the words as set out in the preceding statement. His counsel contend that from these admissions it appears he has employed the word "attorney" in a qualified and restricted sense, in that thereby he has only held himself out to the world as an attorney in matters pertaining to patents or pensions; and hence, it is argued, it thus appears that he has not sought, by the use of the word "attorney," to convey the information that he was a person authorized by license of this court to practice before the courts of record of this state.

The word "attorney," following the name of a person, when not qualified, is ordinarily understood to mean a member of the legal profession, and one who, as an attorney-at-law, is legally authorized to appear for and represent clients who are parties

to causes in courts of record.—*People ex rel. Hughes v. May,* 3 Mich. 598; *Clark v. Morse,* 16 La. Rep. 575.

Webster's definition of "attorney" is "A legal agent qualified to act for suitors and defendants in legal proceedings; an attorney-at-law." Such is the understanding of people generally. The publishers of the directory appear to have so understood it when they published respondent's name in the list of attorneys of their own motion. The word "attorney," as employed by respondent upon his signs, cards and letter-heads, and in the city directory in the manner we have indicated, would not convey to any person the information that he restricted his practice to cases before the patent and pension departments of the government; but, on the contrary, that he was a practicing lawyer in the ordinary acceptation of that term, by which members of that profession are designated, and that in addition to practicing law before the courts of record of this state, he gave attention to patent and pension cases. There is nothing in the arrangement of the words following his name upon his signs, cards and letter-heads, or in the directory, or in the punctuation, to suggest that he was not an attorney-at-law. And so we must conclude, from respondent's own admissions, that he has violated the statute in question by advertising and holding himself out to the world as an attorney-at-law.

The fact that respondent has written and circulated letters wherein he states that he confines his practice exclusively to patents, pensions and claims against the government, is no defense to the charge here made. As to persons receiving such letters, it might be said they would understand that he was not engaged in the practice of the law, but we are dealing with the information which respondent intended to, and, in fact, did, convey, to the general public by

the language employed on his cards, letter-heads, signs, and following his name in the directory—that he was an attorney-at-law, and not with respect to the information that his practice was limited to certain matters, as stated in his letters, which would only reach those who happened to receive them. And here it is not amiss to add that in his reply to the letter addressed to him, set out in the statement, he did not state that he was not engaged in the practice of law, and the person receiving it would naturally infer from its contents that he was, and would, if employed, institute an action for divorce.

The validity of the statute is attacked solely upon the ground that it violates § 21, article 5, of our state constitution, in that the part of the statute which respondent is charged with violating relates to a subject not expressed in its title, or that the statute embraces two subjects, or that by its title it is restricted to one class of offenders. In other words, it is contended that the body of the bill relates to persons practicing law without license, and also to those advertising or representing themselves to be lawyers when, in fact, they are not licensed, although the title only embraces persons practicing law who are not licensed, or that, by the terms of its title, it is restricted to the first class.

The provision of the constitution in question has been before this court many times for consideration, with the result that it has often been declared that it is mandatory, and legislation falling within its inhibition is ineffectual; that its purpose was to convey, by the title to a bill, information relating to proposed legislation, and to prevent the passing of laws alien to the subject as thus expressed; but it has also been declared that this provision must be given a reasonable construction, and that legislation ger-

mane to the subject as expressed in the title of an act is not obnoxious to its provisions.

That which is appropriate or relevant to the subject of a bill as expressed by its title, or is a necessary incident to the object of a bill, as thus expressed, is germane.—*Golden Canal Co. v. Bright,* 8 Colo. 144; *Frost v. Pfeiffer,* 26 Colo. 338.

In this respect one test is, whether the legislation in the body of a bill is upon matters properly connected with its subject as expressed by its title, or proper to the more full accomplishment of the object so indicated.—*Bd. Co. Comrs. El Paso Co. v. Bd. Co. Comrs. Teller Co.,* 32 Colo. 310; *Stewart v. Kinsella,* 14 Minn. 524.

Our legislature has wisely provided that only those duly licensed and enrolled as attorneys shall engage in the general practice of the law in this state. This provision is for the protection of the public, and as a further means to this end, the act in question was passed. Its purpose, as expressed in its title, was to prevent persons not licensed from engaging in the practice of law. To accomplish this purpose to the full extent, it was not only appropriate and relevant to the subject of the bill as expressed in its title, but, also, a necessary incident to its object as thus indicated, to inhibit persons from representing themselves as attorneys-at-law when, in fact, they were not. We, therefore, conclude that the statute is not obnoxious to the provision of the constitution invoked.

From the admissions of the answer of respondent, he is guilty as charged in the information, and the motion for judgment on the pleadings is sustained.

This is the first case that has been brought under the act of 1905. Respondent says in his answer that he has ceased to advertise as an attorney, and will

obey the law in the future. For this reason we will not impose any penalty at this time, but will continue the proceeding for thirty days for the purpose of allowing respondent to fully state, under oath, the extent to which he intends to obey the provisions of the act of 1905, and has obeyed it since this proceeding was instituted, and also for the purpose of permitting the petitioner, on sufficient notice to respondent, to submit for our consideration testimony touching the claim of respondent, that since filing this petition he has ceased to violate the law in question. Respondent will submit his proofs within ten days; petitioner within ten days thereafter; respondent to reply within the ten days next succeeding.

Decision *en banc.*    *Motion for judgment on pleadings sustained.*