STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION,
Complainant,

v.

**Carroll SAMARA, Respondent.**

**No. SCBD 2830.**

Supreme Court of Oklahoma.

May 29, 1984.

Order of Publication June 19, 1984.

Gary Rife, K. Lynn Anderson, Timothy P. Morris, Oklahoma Bar Association, Oklahoma City, for complainant.

Gomer Smith, Jr., P.C., Smith & Murdock, Oklahoma City, for respondent.

HARGRAVE, Justice.

Carroll Samara seeks reinstatement to the active practice of law in accordance with the provisions of 5 O.S. 1981, Chapter 1, App. 1–A, Rule 11.1. The application has been referred to the Professional Responsibility Tribunal of the Oklahoma Bar Association in accordance with the provisions of Rule 11.3 of the previously cited portion of Title 5. A chronology of the facts pertinent to this application, as summarized by the report of the Trial Panel of the Professional Responsibility Tribunal, begins with the fact that on August 29, 1979, the petitioner was convicted of a federal felony in Case No. CR–79 15D (W.D. Okla.), that being violation of 26 USC § 7206(1) and 26 USC § 7201; making and subscribing a false tax return and attempting to evade and defeat income tax. Thereafter, this tribunal suspended respondent, and that order was modified on October 9, 1979, allowing petitioner to continue to practice in all cases he had pending at that

time. One year later, October 28, 1980, the suspension was made absolute until further order of the court. A year and a day later petitioner began serving a three-year sentence on the aforementioned conviction. A final order of discipline was entered against respondent in November of 1982, suspending the petitioner until October 27, 1984, providing also that in the event petitioner was discharged from probation prior to that date, he may then apply for reinstatement under Rule 11.1 of 5 O.S. 1981, Chap. I, App. 1–A. The petitioner was discharged prior to October 27, 1984, and has sought reinstatement.

Pursuant to that petition for reinstatement, a hearing was held, and the panel made the mandatory findings required by the provisions of Rule 11.5.[1] That rule requires the trial panel to make specific findings upon (1) applicant's possession of good moral character necessary for admission; (2) whether or not applicant has engaged in *any* unauthorized practice of law during suspension, and (3) whether applicant possesses the competency and learning in the law required for admission to the bar.

It is highly material and indeed a central portion of the inquiry undertaken here that the title of the rule clearly specifies that these determinations are prerequisites to reinstatement.[2] The Trial Panel found petitioner to possess the required good moral character needed for reinstatement, as well as the competency and learning in the law required for admission. The trial panel found the applicant did engage in the unauthorized practice of law during the period of his suspension. The report of the trial panel contains specific examples of such unauthorized practice.

During the period from October 9, 1979, that this Court allowed petitioner to practice only "in all cases pending at the time where the applicant's name appeared as attorney of record," petitioner notified a member of the public that he represented Mr. Jack Delbert Cotton II on all claims arising from injuries and property damage in an accident occurring August 4, 1980. After this partial suspension became absolute on October 28, 1980, petitioner contacted the Department of Public Safety on behalf of a client on stationery listing Mr. Samara as attorney at law several times. Two months after the suspension was absolute this Court denied a request to vacate the suspension order. The report of the Trial Panel outlines two instances of dealing with claims adjusters in the capacity of attorney and an appearance before a court of record as the attorney of record for a felony defendant in Cause CRF 80–4312 in Oklahoma County. On January 7, 1981, petitioner wrote LeNelda Brunson, on stationery listing himself as attorney of law, requesting that she come to his office to

1. 11.5. Findings prerequisite to reinstatement.

At the conclusion of the hearing held on the petition for reinstatement, the Trial Panel of the Professional Responsibility Tribunal shall file a report with the Supreme Court, together with the transcript of the hearing. Said report shall contain specific findings upon each of the following:

(a) Whether or not the applicant possesses the good moral character which would entitle him to be admitted to the Oklahoma Bar Association;

(b) Whether or not the applicant has engaged in any unauthorized practice of law during the period of suspension, disbarment or resignation;

(c) Whether or not the applicant possesses the competency and learning in the law required for admission to practice law in the State of Oklahoma, except that any applicant whose membership in the Association has been suspended or terminated for a period of five (5) years or longer, or who has been disbarred, shall be required to take and successfully pass the regular examination given by the Board of Bar Examiners of the Oklahoma Bar Association. Provided, however, before the applicant shall be required to take and pass the bar examination, he shall have a reasonable opportunity to show by clear and convincing evidence that, notwithstanding his long absence from the practice of law, he has continued to study and thus has kept himself informed as to current developments in the law sufficient to maintain his competency. If the Trial Panel finds that such evidence is insufficient to establish the applicant's competency and learning in the law, it must require the applicant to take and pass the regular bar examination before a finding as to his qualifications shall be made in his favor.

2. *Id.*

discuss a divorce settlement. Lastly, as late as May 1, 1981, Mr. Samara continued to correspond with the Department of Public Safety on behalf of clients on stationery listing him as an attorney at law. Said stationery listed no other attorneys and these letters were signed by Mr. Samara. The marquee on petitioner's office door contained the words "law office" and petitioner's name during the petitioner's incarceration, and it was removed only after his return therefrom. In addition, the report of the Trial Panel notes petitioner maintained his listing as Attorney at Law in the telephone directories during the years 1981 and 1982.

The Trial Panel held that the disregard shown the orders of the Supreme Court by petitioner strikes at the heart of the oath of an attorney, and despite the testimony of many prominent attorneys in behalf of Mr. Samara's dedication to his clients, the continued transgressions of the orders of suspension far outweighed that worthy consideration. The Trial Panel concluded that petitioner's continued practice in public defiance of the Supreme Court orders is of such a serious nature that petitioner should not at this time be granted the privilege of having his suspension order terminated.

Pursuant to this Court's direction, petitioner has filed a brief in support of his petition for reinstatement and presents three propositions in support thereof.

First, petitioner asserts this Court has never had constitutionally valid jurisdiction to proceed against him, and thus this proceeding should be dismissed and previously issued orders should be vacated because they are void *ab initio*. Those arguments have been rejected by the summary order denying the motion to dismiss dated October 13, 1981.

The petitioner's second proposition is basically that the Trial Panel improperly considered evidence as to misconduct (of practicing law while under suspension) occurring prior to November 4, 1982, the date of the final order of discipline entered in this cause. Petitioner contends that all evidence of misconduct was known or should have been known to the Oklahoma Bar Association prior to the date of the final order, and the proper time for submission of these facts was at the time of that hearing. The authority cited for such a conclusion is Jones on Evidence, Civil and Criminal, Spencer Gard, 6th Edition 1972 §§ 17.55 and 17.66.[3]

Inasmuch as this proceeding is a bar disciplinary matter and not a general civil or criminal action, it is deemed proper to approach this discussion by examining the relevant rules on disciplinary proceedings. First, we note that Rule 6.12(a) provides that disciplinary proceedings and reception of evidence shall be governed generally by the rules in civil proceedings:

"(a) So far as practicable, the disciplinary proceedings and the reception of evidence shall be governed by the rules

---

3. "§ 17:55. Conclusiveness as to Matters Adjudicated.

"All courts recognize and give effect to the rule that, where a matter has been adjudicated and finally determined by a competent tribunal, the determination is conclusive between the parties and their privies. * * *

"If the court is shown to have had jurisdiction of the subject matter and the parties, its decision as to them and their privies, stands as a finality until set aside by a rehearing, an appeal or some other proceeding which is recognized by the law.

"Regardless of the showing as to whether the judgment is in fact correct or incorrect, just or unjust, it may not be collaterally attacked. The rule is by no means limited to courts of record or those of general jurisdiction; the principle obtains if the judgment is

that of a justice of the peace acting within his jurisdiction, or if it is that of a court of general jurisdiction. * * * * * "
and,
"§ 17:66. Issues Which Might Have Been Litigated in Former Action.

"As a general rule, where the parties and the cause of action are the same, a party may not relitigate a matter which might have been determined in a former action, but which was not presented to the court because of negligence, inadvertance or design. The defense of res judicata applies, except in special cases, not only to points upon which the court is actually required to pronounce judgment, but to every point which properly belonged to the subject of the litigation, and which the parties, exercising reasonable diligence, might have brought forward for decision at the time."

in civil proceedings *except as otherwise herein provided;* the respondent shall be entitled to be represented by counsel." (Emphasis added.)

Thus, the petitioner's citation to authority relating to general civil rules of trial procedure are proper as long as the rules do not otherwise provide. In the instance before the Court now, however, we find that the rules have made specific reference to the matters properly cognizable in a reinstatement proceeding. The rule so providing is found in the Rule 11 provisions for reinstatement, specifically Rule 11.4 entitled: "Standard of Proof for Petitions for Reinstatement." Rule 11.4 states:

"An applicant for reinstatement must establish affirmatively that if re-admitted or if the suspension from practice is removed the applicant's conduct will conform to the high standards required of a member of the bar. The severity of the original offense *and the circumstances surrounding it shall be considered in evaluating an application for reinstatement.* The burden of proof by clear and convincing evidence in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualification than one seeking admission for the first time. The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant...."

■ This rule specifically provides that all circumstances surrounding the original disciplinary proceedings are relevant and proper inquiries in a reinstatement proceeding. The primary purpose of disciplinary proceedings is not punishment but purification of the Bar. Every licensed lawyer is presented to the public as a person worthy of the trust of the public as to his professional integrity and expertise. *State ex rel. Okla. Bar Assn. v. Raskin,* 642 P.2d 262 (Okl.1982). The purpose of the proceeding and the inquiries made therein are broad; that is to allow the applicant to demonstrate that he is worthy of the honored mantle of an officer of this Court—an

attorney of the State of Oklahoma. Respect for the rule of law is a singularly important trait in an attorney, for it is this profession upon which falls the weighty social duty of fostering respect for the laws of society and the rule of law over men. The bases of an attorney's duties to this Court and society in general are broad and require the unfailing devotion of the practitioner in his profession. It is in this spirit that the rules for reinstatement specifically require a wide basis of inquiry. Our cases have consistently refused to allow the more technical rules of practice to fetter this broad inquiry. We have previously held that this Court desires the entire record of an attorney's professional conduct before the Court in a disciplinary action, thereby refusing to allow what was termed an arbitrary statute of limitations to circumscribe the investigation made in such disciplinary hearing. *State ex rel. Oklahoma Bar Assn. v. Warzyn,* 624 P.2d 1068 (1981). Similarly, warnings given an attorney during dismissal of a prior complaint have been held to be relevant upon investigation and adjudication of later complaints. *State ex rel. Okla. Bar Assn. v. Massad,* 334 P.2d 787 (Okl.1959).

■ Prior case law from this Court indicates this tribunal will not unnecessarily circumscribe disciplinary proceedings by procedural rulings. The same policy considerations apply to reinstatement. The disciplinary rules explicitly provide for consideration of an individual reinstatement petition in the light of surrounding circumstances. (Rule 11.4). Finally, the purpose and function of a reinstatement inquiry is to provide a forum for providing the State and the Bar with attorneys meeting the solemn standards of competence, integrity and respect for the law which the public deserves and requires. These inquiries require a full scope free of artificial restrictions. Accordingly, this Court declines to circumscribe the relevant bases of inquiry in this reinstatement proceeding as requested by the applicant. Thus the Trial Authority is held not to have erred in considering the instances of unauthorized

practice found in the record and used as a basis for determining that the respondent has engaged in the unauthorized practice of law.

■ At various stages in the proceeding before the Trial Panel, the applicant took the position that suggests that portions of his practice did not amount to the practice of law. Patently, appearing before a court as counsel for the defendant amounts to and equates with acting as an officer of this court. Moreover, other actions referred to as clerical in nature by applicant at various stages in the proceeding, some of which have been noted from the Trial Authority's report, have been held to be, and should be recognized by the Bar as the active practice of law. *Houts v. State ex rel. Okla. Bar Assn.*, 486 P.2d 722 (Okl. 1971), explicitly rejects this more narrow definition of practice of law which was, in turn, rejected by the Trial Authority.

Applicant contends that the character reference affidavits of members of the bar establish his good moral character and fitness to practice. Thus this Court should reinstate petitioner in the sound exercise of its discretionary authority. The respondent Bar Association replies to this proposition by quoting from the sworn affidavit of applicant filed concurrently with his petition for reinstatement to the active practice of law, filed March 15, 1983, the first full paragraph of page two:

"Affiant further states that following his period of total suspension on *October 28, 1980*, that affiant advised his former clients, either orally or in writing, that he was suspended from the practice of law and could no longer represent them, and *has not held himself out as a lawyer or practiced law* before any federal or state tribunal or administrative agency *since said date.*" (Emphasis added.)

Complainant points to the undenied activities of petitioner cited in the Trial Authority's report and mentioned in preceding portions of this opinion as being in direct conflict with this affidavit. On this basis, complainant contends that the affiant has demonstrated to this Court a lack of good character, as well as practice of law during suspension, and therefore the affidavits from members of the bar do not stand uncontradicted in the record.

■ This Court has considered the complete record in this proceeding. In these proceedings, the Supreme Court does not function as a reviewing tribunal but as a licensing court exercising its exclusive original jurisdiction. *State ex rel. Okla. Bar Assn. v. Raskin*, 642 P.2d 262 (Okl. 1982). Recommendations made by the Trial Panel are advisory in character, for the ultimate decision rests with the Supreme Court, although it has been said that such recommendations will be given great weight. *Application of Sharpe*, 499 P.2d 406 (Okl.1972). Considering the nature of the offense and the circumstances surrounding the suspension, together with the petitioner's conduct during suspension, *Applic. of Sharpe, supra*, this Court determines that the applicant is not entitled at this time to be re-admitted to the active practice of law, and the application is therefore denied.

Additionally, as this decision in the premises is fully explored and evaluated on the basis of the record before the Court, the petitioner's application for oral argument is hereby denied.

PETITION FOR REINSTATEMENT TO ACTIVE PRACTICE OF LAW DENIED; PETITION FOR ORAL ARGUMENT DENIED.

BARNES, C.J., SIMMS, V.C.J., LAVENDER, DOOLIN and KAUGER, JJ., and YOUNG and WILSON (CHAS.), Special Judges, concur.

HODGES, J., dissents.

YOUNG, Special Judge for OPALA, J., disqualified.

WILSON, C., Special Judge for WILSON, A., J., disqualified.