**In the Matter of the Reinstatement of Stephen Ferrell CLIFTON, to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.**

**SCBD No. 3607.**

Supreme Court of Oklahoma.

Feb. 13, 1990.

Daniel K. Zorn, Oklahoma City, for petitioner.

Gloria Miller White, Oklahoma City, for complainant.

SUMMERS, Justice.

This is an application for reinstatement of an attorney who resigned pending disciplinary action. The Bar Association joins in the attorney's request that he be reinstated to membership in the Bar. The Professional Responsibility Tribunal recommended that the attorney be reinstated to practice law without taking the Bar examination.[1] We find that the petitioner should be so reinstated.

Stephen Ferrell Clifton was admitted to the Bar in April of 1977. In 1980 he resigned pending a disciplinary proceeding arising out of his use of a client's funds to pay a gambling debt. More than five (5) years following his resignation he filed an application for reinstatement pursuant to 5 O.S.1981 Ch. 1. App. 1-A, Rule 11.1, which was denied by this court. (*Matter of Reinstatement of Clifton*, SCBD # 3451, 59 O.B.J. 1632, June 14, 1988). In that proceeding the Bar Association objected to Clifton's reinstatement.

In the present proceeding the position of the Bar Association was explained by counsel.

"We have investigated Mr. Clifton again this year particularly with the view towards the areas of concern on the part of the Trial Panel after the last reinstatement hearing. We have discovered that the apparent tax problems have been resolved. Mr. Clifton has a history of paying in a timely manner the payments to the federal government, the loan that was taken to pay the Oklahoma tax return has been—that loan has been repaid. We have a copy of Mr. Clifton's

---

**1.** The Professional Responsibility Tribunal divided 2-1 in favor of readmission without taking the Bar exam. The dissenting member stated his view that after five years an applicant should have to take the exam.

1988 tax return, it was timely filed. On that he was listed as an insurance adjuster.

Also from everything we have been able to discern Mr. Clifton married just about a year ago, he did adopt his current wife's two children. And apparently it's working very, very well for all concerned, particularly for the two children.

Mr. Clifton did enroll, we verified that he did enroll in and attend the bar review, he has taken CLE and we also verified that he has clerked for his father, Attorney Lowell Clifton, during the last year.

Additionally, from all the checking we have been able to do, we have found no evidence whatsoever of any unauthorized practice of law during Mr. Clifton's period of resignation.

At this point the Bar Association finds no reason to oppose Mr. Clifton's reinstatement." Tr. 9–10.

The Bar did not present any evidence. Clifton presented evidence which showed: (1) his now stable home life, including evidence of church attendence and coaching his children's baseball teams, (2) the absence of gambling, (3) his explanation that he resigned because he had recognized that his misconduct warranted severe discipline, (4) his employment as a landman and insurance adjuster, (5) his employment in his father's law office, (6) his having taken the bar review and one CLE course, (7) his history of payments to the I.R.S., and (8) the payment of past tax liability to the Oklahoma Tax Commission.

Counsel for the Bar explained that Clifton, at the suggestion of the Bar, agreed to be examined by a psychiatrist of the Bar's choosing. The report of the psychiatrist was that "there was absolutely nothing about Steve Clifton's personality at this time to display that gambling, that he should anticipate that gambling is a problem now [sic]." Counsel for the Bar made the following observation concerning Clifton's moral character:

"Concerning Mr. Clifton's good moral character. Again, after visiting with a number of individuals last year during the hearing and visiting with all the witnesses that he had listed this year, we find just absolutely nothing to indicate that at this time in his life that Mr. Clifton possesses anything other than good moral character."

In exercising this court's exclusive original jurisdiction in a reinstatement proceeding this court independently reviews the evidence submitted to the trial panel. *Matter of Reinstatement of Floyd*, 775 P.2d 815, 816 (Okla.1989). In examining that evidence we must determine (1) the present moral fitness of the petitioner, (2) the petitioner's demonstrated consciousness of the wrongful conduct and disrepute such conduct has brought the profession, (3) the extent of the petitioner's rehabilitation, (4) the seriousness of the original misconduct, (5) his conduct subsequent to discipline, (6) the time which has elapsed since the original discipline, (7) his character, maturity, and experience at the time of discipline, and (8) the petitioner's present competence in legal skills. *Id.* See also, *In the Matter of Kamins*, 752 P.2d 1125, 1130 (Okla. 1988).

Upon consideration of these eight factors, we find that the evidence is clear and convincing that Stephen Ferrell Clifton has not engaged in the unauthorized practice of law, possesses good moral character, and possesses the competency and learning in law necessary for the admission to practice law in Oklahoma.

The Bar Association has filed a motion to assess costs against Clifton in the amount of $555.85. The motion is granted. 5 O.S. 1981, Ch. 1, App. 1–A, Rule 11.1(c). See also, *Matter of Reinstatement of Floyd*, 775 P.2d at 818.

IT IS THEREFORE ORDERED THAT Stephen Ferrell Clifton be reinstated to the practice of law and membership in the Oklahoma Bar Association and to the Roll of Attorneys, effective upon the payment of costs in the amount of $555.85.

All Justices concur.